UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ERIN N. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-90-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Erin Reynolds, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Reynolds' application for supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will DENY Reynolds' Motion for Summary Judgment[1] [R. 27] and GRANT the Commissioner's. [R. 26.]

**I**

Reynolds filed an application for SSI on June 7, 2010. [Transcript (Tr.) 107-10.] She alleges a disability beginning on June 1, 2010, due to multiple sclerosis (MS), optic neuritis, and social anxiety. [Tr. 121.] Reynolds' application was denied initially and upon reconsideration in December 2010. [Tr. 15.] Subsequently, at Reynolds' request, an administrative hearing was conducted by video before Administrative Law Judge (ALJ) Gregory O. Varo on August 19, 2011. [Tr. 29-46.] Reynolds, who was eighteen years old when she filed her application, has a

---

[1] Reynolds' counsel initially filed her motion for summary judgment in September 2014, as an attachment to a motion for extension of time, at Docket Entry No. 12. Subsequently, Reynolds' counsel was removed from her case, and the Court granted Reynolds' motion to proceed *pro se* and use her counsel's previously filed motion for summary judgment as her own. Hence, the citations to Reynolds' motion refer to Docket Entry No. 12-4, although the brief in support of her motion is found at Docket Entry No. 27.

high school education and some college. [Tr. 121, 35-36.] She has no past relevant work. [Tr. 22.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920.[2] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering her residual

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

functional capacity, age, education, and past relevant work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that Reynolds had not engaged in substantial gainful activity since June 7, 2010, the alleged onset date. [Tr. 17.] At Step 2, the ALJ found that Reynolds has two "severe" impairments: multiple sclerosis and history of optic neuritis. [*Id*.] At Step 3, the ALJ found that Reynolds' impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 18.] The ALJ then considered the entire record and determined that Reynolds possessed the residual functional capacity to perform limited light work as defined in 20 C.F.R. § 416.967(b). [Tr. 20-22.] At Steps 4 and 5, the ALJ found that although Reynolds has no past relevant work, considering her age, her education, and her RFC, there are a significant number of jobs in the national economy that Reynolds could perform. [Tr. 22-23.] Accordingly, on September 2, 2011, the ALJ found that Reynolds was not "disabled" and therefore is ineligible for SSI. [Tr. 23]. The Appeals Council declined to review the ALJ's decision [Tr. 1], and Reynolds now seeks judicial review in this Court.

**II**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of

3

choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## A

On appeal, Reynolds primarily challenges the ALJ's ultimate determination that she was capable of a limited range of light work. [R. 12-4 at 10-13.] In doing so, Reynolds presents two main arguments – first, that the ALJ failed to consider the progressive nature of multiple sclerosis, and second that the ALJ improperly found that Reynolds' severe impairments did not meet or equal Listing of Impairment 11.09. [R. 12-4 at 11-12.] Because these arguments are integrally related to the ALJ's determination of Reynolds' RFC, however, the Court will first examine the key issue of whether substantial evidence supports the ALJ's findings concerning the RFC. *See* 42 U.S.C. § 405(g).

An individual's RFC is an administrative determination about the person's maximum ability to perform work-related activities and reflects the most that the person can do in a work-

related setting despite his or her limitations. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(1). This assessment "is based upon consideration of all relevant evidence in the case record," including medical evidence as well as the individual's own statements of what he or she can do. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(3). Given the role of the Court at this stage in the process, the key issue concerning Reynolds' RFC is whether the ALJ's determination is supported by substantial evidence. *See* 42 U.S.C. § 405(g). As noted above, this Court must give deference to the Commissioner's decision "[e]ven if this Court might have reached a contrary conclusion of fact . . . so long as [the decision] is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010); *Ulman*, 693 F.3d at 714.

Here, ALJ Varo determined that Reynolds could perform limited light work as defined in 20 C.F.R. 416.967(b) with the following restrictions:

> Lift 10 pounds frequently and 20 pounds occasionally; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; frequently climb ramps and stairs; never climb ladders ropes or scaffolds; frequently stoop, kneel, crouch and crawl; avoid concentrated exposure to extreme heat; avoid all exposure to hazards such as moving machinery and unprotected heights; do no work-related driving."

[Tr. 20-21.] In making this determination, ALJ Varo properly considered how consistent Reynolds' symptoms were with the objective medical evidence in the record. For example, her medical records confirm the diagnosis of MS and optic neuritis in her left eye, but the records of Reynolds' treating neurologist Dr. Anderson do not support a conclusion that she was completely disabled. In 2009, Dr. Anderson noted that although Reynolds had intermittent, "mild" headaches and some "mild" anxiety which was treated with medication, her general health was

5

good and her physical examination was "normal." [Tr. 300-02.] After Reynolds saw Dr. Anderson again in 2010 following a "mild" episode of optic neuritis, he noted that her vision problems had resolved after two weeks, she still retained 20/20 vision, her left-side numbness had also resolved, and though she had some moodiness she denied any depression. [Tr. 288.] Consultative physician Dr. Rogers examined Reynolds in September 2010 and also found that her main complaints were occasional loss of vision in one eye, intermittent numbness, heat sensitivity, and fatigue; but that she was able to sit, carry a conversation, respond appropriately to questions, and carry out and remember instructions. [Tr. 304-10.] The ALJ also considered the opinions of state agency physicians who concluded that Reynolds could perform medium work. [Tr. 55-56, 394.] Despite these opinions, however, ALJ Varo determined that based on the record as a whole, a limitation to light work was more appropriate, and therefore reduced the recommended RFC to limited light work. [Tr. 22.]

In evaluating Reynolds' complaints, ALJ Varo determined that Reynolds "was fully credible regarding her severe impairments," but found that Reynolds was "not credible" concerning her claim that these impairments prevented her from doing all work activities. [Tr. 21.] Even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citing *Walters,* 127 F.3d at 531). Here, ALJ Varo noted that despite Reynolds' claims of blurred vision, she testified that she does not have blurred vision

6

when wearing her glasses. [*Id*.] Both Reynolds' testimony and her medical records indicated that her MS flares occur intermittently and result in some numbness in her left leg which affects her balance and her ability to walk at a normal pace. [*Id*.] Despite such difficulties, the ALJ noted that Reynolds had completed twelve hours of college courses at Lees College in the previous year and was currently enrolled in three classes. [*Id*.] She also is able to use her computer, internet, and Facebook account; she has a driver's license; and she is able to go shopping when she needs something. [Tr. 37-40.] Reynolds presented no evidence of physical or mental limitations placed on her by any treating source, and she admitted that no doctor had put any work or school limitations on her. [Tr. 22, 37.] Even despite the lack of limitations placed on her by a treating physician, ALJ Varo still gave Reynolds the benefit of the doubt by including several restrictions in the RFC which accounted for all the symptoms she claims to suffer from.

As explained above, this Court is limited to a determination of whether the Commissioner's decision, "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604 (6th Cir.2009)). Here, ALJ Varo's decision is supported by substantial evidence. Reynolds has not demonstrated that the ALJ's decision was improper, nor has she pointed to evidence in the record supporting her claim that the ALJ did not already properly weigh and consider. The fact that Reynolds disagrees with the ALJ's ultimate conclusion is not by itself sufficient to meet her burden. More than mere disagreement with the ALJ's conclusion is required to successfully assign error to an ALJ's

7

findings. *See, e.g., Richards v. Astrue*, at *8 (N.D.Ohio, June 8, 2012) (quoting *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *7 (W.D.Mich. Mar. 26, 2012)). Having established this framework, the Court will next examine Reynolds' two specific challenges to the ALJ's ultimate decision.

## B

### 1

As part of her overall challenge to the ALJ's determination, Reynolds argues that the Sixth Circuit requires consideration of the progressive nature of multiple sclerosis, and of the fact that the intensity of symptoms can come and go, which according to Reynolds the ALJ did not evaluate properly. [R. 12-4 at 11-12.] As an initial matter, however, Reynolds does not point to any Sixth Circuit controlling precedent indicating that ALJ Varo did not properly assess her MS. The only case from the Sixth Circuit to which Reynolds cites recognizes that MS is a progressive, episodic disease, and that in evaluating it "consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). The court in *Wilcox* emphasized that people suffering from MS often have periods of remission and notes that it would be error to mistake those periods of remission for times of improvement or ability to perform certain work. *Id*. Thus, the court found that in light of a history of progressively worsening symptoms, the claimant should not be penalized for attempting to work during periods of remission. *Id*. Clearly, such circumstances are not at issue in Reynolds' situation. The evidence in the record does not indicate that Reynolds has a history of progressively worsening symptoms, or that she has had periods of remission during which she attempted to work.

ALJ Varo also properly considered the frequency and duration of exacerbations of Reynolds' condition as required by *Wilcox*, and he noted there was no evidence of any permanent disabilities. [Tr. 19-20.] He particularly noted what symptoms Reynolds had, recognized that several of her symptoms came and went intermittently, and closely analyzed what limitations they caused when they occur. The ALJ specifically considered that, based on the medical evidence and Reynolds' testimony, even when her MS symptoms did "flare up," the resulting limitations did not render her disabled as defined in the regulations. For instance, Reynolds testified that the occasional loss of vision in her left eye had only happened twice before and was well controlled by wearing her glasses [Tr. 36-37], and that the intermittent numbness in her left leg caused some difficulty in walking at a normal pace on the occasions that it occurred. [Tr. 33-34.] Both the medical evidence and Reynolds' testimony indicated that Reynolds was generally otherwise functional despite those symptoms. [Tr. 21, 33-37.] ALJ Varo also considered Reynolds' other symptoms, such as her heat sensitivity and fatigue, which he accounted for in the limited RFC. [Tr, 20-21.] To the extent that Reynolds implies that ALJ Varo should have made projections about how her symptoms could vary and become worse in the future, such reasoning would be far too speculative for an ALJ to properly engage in. Thus, in finding that Reynolds was not disabled, ALJ Varo considered all the medical and nonmedical evidence, and appropriately fulfilled all that was required of him. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review.").

Moreover, the fact that multiple sclerosis is a progressive disease does not mean that it is per se disabling. *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1108 (6th Cir.

9

1989); (citing *Gieger v. Sec'y of Health & Human Servs.*, 810 F.2d 200, 1986 WL 18397, *2 (6th Cir. Nov. 7, 1986) (unpublished decision) (affirming ALJ's decision to deny benefits when claimant "relied too heavily on the fact that she had a serious disease as if the incantation of 'multiple sclerosis' in and of itself would carry her burden of proof")).  The claimant must still present medical evidence as proof of her claims, and here, Reynolds simply has not presented sufficient proof that she cannot perform any work.

Additionally, Reynolds contends that the ALJ should have included in the RFC the same "vocational and environmental accommodations" which Reynolds' schools had given her, and that such accommodations would limit her to "sheltered work environments," thus precluding her from working in "substantial work environments in the general economy." [R. 12-4 at 12.]  This accusation is unfounded, however, because the ALJ specifically accounted for Reynolds' symptoms and limitations in the RFC analysis.  [Tr. 20-22.]  The accommodations suggested by Owsley County High School in 2009 which Reynolds references are signed by teachers and guidance counselors, and they relate to helping her adapt to a classroom or testing environment.  [Tr. 192-94.]  These accommodations simply explain that Reynolds was diagnosed with MS; they note that Reynolds has experienced symptoms of headaches, vision problems, fatigue, and anxiety; and they suggest only four specific accommodations related to the classroom.  [*Id*.]  Those accommodations constitute the following:  dimming one set of lights in the classroom, allowing Reynolds to take a break when she feels anxious, allowing Reynolds more frequent time to use the bathroom because of her medication, and providing Reynolds with a quiet location when taking a test.  [*Id*.]  These accommodations are not part of a medical report, they were not formulated to apply to a work environment, and they are not entitled to any special weight.  Nevertheless, ALJ Varo specifically noted those accommodations and considered them.

[Tr. 18.] Moreover, his RFC determination included far more additional limitations on Reynolds' activities than the school accommodations did by including limitations on the amount she could lift and carry, prohibitions on climbing ladders or scaffolding, recognizing that Reynolds must avoid concentrated exposure to heat and to hazards such as moving machinery or unprotected heights, and that she can do no work-related driving. [Tr. 20-21.]

**2**

Next, Reynolds contends that ALJ Varo improperly found that she did not meet the Listing of Impairment 11.09 because the ALJ failed to consider the evidence in the record collectively – specifically, that he understated her visual impairments, ignored the environmental accommodations made by Owsley County High School, and misrepresented the severity of Reynolds' fatigue. [Tr. 12-13.] At Step 3 of the sequential evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *See* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

In his analysis at Step 3, ALJ Varo explained the criteria for meeting Listing 11.09, and he summarized all the medical evidence in the record as support for his conclusion that Reynolds

11

did not meet that criteria. [Tr. 18-20.] Specifically, to meet the Listing for multiple sclerosis, Reynolds had the burden of proving: (1) that she had "disorganization of motor function as described in 11.04B," which is described as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station"; or (2) "[v]isual or mental impairment as described under the criteria in" other sections; or (3) "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." 20 C.F.R. Part 404, Subpart 404, App. 1, 11.09. Although Reynolds now contends that the ALJ understated her visual impairments and fatigue, she points to no evidence in the record to meet her burden on this point. As explained above, the accommodations made by Reynolds' high school do not prove the severity of her impairments as required by the Listing, and the ALJ both considered and accounted for them in the RFC determination. The ALJ specifically noted that none of the evidence in the record supported a finding that Reynolds had significant disorganization of motor function as defined in the Listing, and noted that her visual impairment was occasional rather than constant and was adequately managed with glasses. [Tr. 19-20.] He also noted that based on both the medical evidence and her testimony, Reynolds' fatigue was not preventing her from a limited range of normal activities, and no medical evidence in the record indicated her fatigue was that of significant, reproducible fatigue of motor function or muscle weakness. [Tr. 20.] In short, the medical evidence in the record does not support a finding that Reynolds meets the criteria of Listing 11.09, and mere disagreement with that conclusion is inadequate to satisfy

Reynolds' burden of proof on this issue. *See Hambrick v. Comm'r of Soc. Sec.*, 2014 WL 1961945, *7 (S.D. Ohio May 15, 2014).

**III**

Here, substantial evidence supports the ALJ's finding that Reynolds is not completely disabled and that a significant number of jobs exist in the national economy in which Reynolds may work and meaningfully contribute to society. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment [**R. 27**] is **DENIED**;

2. Defendant's Motion for Summary Judgment [**R. 26**] is **GRANTED**;

3. Plaintiff's Motion for Extension of Time [**R. 12**] is **DENIED AS MOOT**; and

4. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 20th day of May, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge